**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

SUPERTECH, INC.,

  *Plaintiff - Appellant*,

v.

MY CHOICE SOFTWARE, LLC,

  *Defendant - Appellee.*

No. 24-2110

D.C. No.
1:23-cv-00002

OPINION

Appeal from the District of Northern Mariana Islands
Ramona V. Manglona, Chief District Judge, Presiding

Argued and Submitted June 6, 2025
Honolulu, Hawaii

Filed October 23, 2025

Before: William A. Fletcher, Morgan B. Christen, and
Roopali H. Desai, Circuit Judges.

Opinion by Judge W. Fletcher

## SUMMARY[*]

### Personal Jurisdiction

The panel reversed the district court's order dismissing for lack of personal jurisdiction an action brought by SuperTECH, Inc. alleging that My Choice Software, LLC failed to provide Microsoft software conforming to the requirements of its bid for a contract with the Department of Finance of the Commonwealth of the Northern Mariana Islands.

Relying on a now-vacated three-judge panel decision in *Briskin v. Shopify, Inc.*, 87 F.4th 404 (9th Cir. 2023), *vacated*, 101 F.4th 706 (9th Cir. 2024), the district court concluded it lacked in personam jurisdiction over My Choice. The decision of the three-judge panel was replaced by the en banc decision in *Briskin v. Shopify, Inc. (Briskin)*, 135 F.4th 739 (9th Cir. 2025) (en banc).

Applying the analysis provided in the en banc decision in *Briskin* and in the three-judge panel decision in *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004), the panel held that SuperTECH alleged facts sufficient to establish specific jurisdiction over My Choice in the CNMI. First, My Choice was subject to personal jurisdiction under either a purposeful availment or purposeful direction analysis. My Choice purposefully availed itself of the privilege of doing business in the CNMI, and intentionally directed its communications and other actions toward the CNMI. Second, neither party contended

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that SuperTECH's claims against My Choice did not arise out of My Choice's contracts with the CNMI. Third, My Choice did not demonstrate that the exercise of specific personal jurisdiction would be unfair or unjust.

## COUNSEL

Michael W. Dotts (argued), Dotts Law Office, Saipan, Northern Mariana Islands, for Plaintiff-Appellant.

Richard C. Miller (argued) and Cong Nie, Banes Horey Nie & Miller LLC, Saipan, Northern Mariana Islands, for Defendant-Appellee.

# OPINION

W. FLETCHER, Circuit Judge:

Appellant SuperTECH, Inc. ("SuperTECH") offers computer and networking services to customers in the Commonwealth of the Northern Mariana Islands ("CNMI"). Appellee My Choice Software, LLC ("My Choice") is a California-based distributor of Microsoft products. In this suit, SuperTECH claims that My Choice failed to provide Microsoft software conforming to the requirements of its bid for a contract with the CNMI's Department of Finance ("DOF").

Relying on a then-binding but subsequently vacated decision of our court, the district court granted My Choice's motion to dismiss for lack of personal jurisdiction. We have jurisdiction under 28 U.S.C. § 1291. We reverse.

## I. Background

SuperTECH is a corporation incorporated in the CNMI with its principal place of business in the CNMI. My Choice is a limited liability company organized in California with its principal place of business in California. We adopt SuperTECH's version of the facts for the purposes of this appeal. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

My Choice is an "official distributor of Microsoft Corporation" software. In an average year, My Choice handles between 60,000 and 70,000 orders for software. An overwhelming majority of those orders is placed online through My Choice's website. A customer placing an order through the website agrees to a forum-selection clause. That clause provides that should an "action or proceeding" arise

from the customer's transaction, that action "must be brought in the state or federal courts of California." *Terms and Conditions*, My Choice Software, https://www.mychoicesoftware.com/pages/terms-and-conditions (last visited July 17, 2025). However, as will be detailed below, some orders, including the order at issue in this case, were not placed through My Choice's website and were not subject to My Choice's forum selection clause.

My Choice's sales to the CNMI constitute "less than 1% of the aggregate gross sales and profits generated from all orders." Because of its relatively few sales in the CNMI, My Choice "has never had any manager, employee, agent, office, or bank account" in the CNMI, nor "any CNMI business license." My Choice has "never advertised or solicited business in any media, such as a local newspaper or the CNMI phone book, within the CNMI." My Choice's "website is not designed specifically to target potential customers located in the CNMI or to promote business in the CNMI," but instead "is accessible to the general public all over the world if they have internet access."

Between 2015 and the filing of this suit, My Choice received 194 orders from individuals or businesses in the CNMI. Of those 194 orders, all but seven were placed through My Choice's website. Of the seven orders not placed through the website, six were placed by SuperTECH. SuperTECH's first transaction with My Choice was in 2019. While some of SuperTECH's purchases from My Choice were small, some—such as a January 5, 2021, software purchase of $174,078.48—were quite large.

In February of 2022, the CMNI's DOF began seeking bids from companies able to obtain Microsoft 365 licensing. On March 10, 2022, SuperTECH's president, Marcelo V.

Masilungan, contacted My Choice by email. Masilungan asked if My Choice would "please provide [him] a quote" and attached a screenshot of DOF's specifications. On March 12, My Choice employee Gabe Magana asked Masilungan for the "end user information" for the transaction—in other words, the identity of the party who would ultimately use the Microsoft product. Masilungan replied that the end user was "the same as before. . . . [R]emember the big purchase [SuperTECH] did[?]" Magana confirmed and stated that he "wanted to make sure it was for the same client."

On March 19, Magana sent a quote to SuperTECH. On March 25, Masilungan replied and asked, "[C]an [Magana] make sure that [My Choice] meet[s] the 100% specification?" Magana replied, stating that he "made sure with [the] Microsoft team that [the quote] meets all requirements [SuperTECH] need[s] in the quote request." Masilungan stated in a declaration that "[t]here were several zoom meetings with Magana and the Microsoft Team where [Masilungan] was assured that the product that [My Choice was] providing conformed to [DOF's] specifications."

SuperTECH submitted its bid in April. The CNMI government accepted the bid in May and authorized SuperTECH to purchase the software. On May 25, SuperTECH sent My Choice $844,800 via wire transfer as payment for the software. My Choice then delivered the software directly to DOF.

The software did not conform to DOF's specifications. As a result, DOF told SuperTECH that it wanted to cancel its contract. SuperTECH then told My Choice that the delivered software was not satisfactory. In response, My Choice sent SuperTECH an updated quote for software that

met the agreed-upon specifications.  That quote included an additional $500,000 charge.  SuperTECH sent DOF the new quote from My Choice.  The new quote was unacceptable to the CNMI government.  DOF canceled its contract with SuperTECH and requested a refund from SuperTECH. SuperTECH then requested a refund from My Choice.  In response, My Choice stated that it would refund SuperTECH's payment of $ 844,500 but would charge a 15% cancellation fee.  SuperTECH objected to the additional fee.

On January 20, 2023, SuperTECH filed suit against My Choice in the District Court for the Northern Mariana Islands.  The operative complaint alleges fraud, breach of contract, promissory estoppel, and unjust enrichment.  On April 20, 2023, My Choice moved to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim.

On March 8, 2024, the district court dismissed the case for lack of personal jurisdiction.  Relying on our now-vacated three-judge panel decision in *Briskin v. Shopify, Inc.*, 87 F.4th 404 (9th Cir. 2023), *vacated*, 101 F.4th 706 (9th Cir. 2024), the court concluded that it lacked in personam jurisdiction over My Choice.  The decision of the three-judge panel has now been replaced by an en banc decision. *Briskin v. Shopify, Inc.* (*Briskin*), 135 F.4th 739 (9th Cir. 2025) (en banc).

SuperTECH timely appealed.  We reverse.

## II.  Standard of Review

"We review de novo a district court's dismissal for lack of personal jurisdiction." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015).

### III. Analysis

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Because "no applicable federal statute confers personal jurisdiction upon the federal district court," we "apply the law of the [jurisdiction] in which the district court sits." *Briskin*, 135 F.4th at 750. "The CNMI's long-arm statute 'subjects both residents and nonresidents to [personal] jurisdiction to the fullest extent allowable under the due process standards of the U.S. Constitution.'" *Saipan Air, Inc. v. Stukes*, No. 1:12-CV-00015, 2013 WL 670026, at *3 (D. N. Mar. I. Feb. 25, 2013) (quoting *Bank of Saipan v. Superior Court*, 6 N. Mar. I. 242, 252 (2001) (per curiam)); *accord* 7 N. Mar. I. Code § 1102(e). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Briskin*, 135 F.4th at 750 (citation omitted).

The question before us is whether the district court has specific personal jurisdiction over My Choice. We evaluate specific personal jurisdiction under a three-part test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the

forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* at 750–51 (quoting *Schwarzenegger*, 374 F.3d at 802). We examine each factor in turn.

### A. Purposeful Availment or Purposeful Direction

"[T]he first prong of the personal jurisdiction test 'may be satisfied by purposeful availment, by purposeful direction, or by some combination thereof.'" *Id.* at 751 n.10 (quoting *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023)).

[A plaintiff] must establish that [the defendant] either purposefully availed itself of the privilege of conducting activities in [the forum state] or purposefully directed its activities toward [the forum state]. We often use the phrase "purposeful availment," in shorthand fashion, to include both purposeful availment and purposeful direction, but availment and direction are, in fact, two distinct concepts. A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis,

on the other hand, is most often used in suits
sounding in tort.

*Schwarzenegger,* 374 F.3d at 802 (internal citations
omitted). We conclude that My Choice is subject to personal
jurisdiction under either a purposeful availment or
purposeful direction analysis.

### 1. Purposeful Availment

To satisfy purposeful availment, "a defendant must have
'performed some type of affirmative conduct which allows
or promotes the transaction of business within the forum
state.'" *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir.
2008) (citation omitted). "Our evaluation of the
jurisdictional significance of a defendant's contract or other
business in the forum is not rigid and formalistic, but rather
practical and pragmatic." *Id.* (citation omitted).

My Choice relies on *Davis v. Cranfield Aerospace Sols.,
Ltd.* to argue against the exercise of personal jurisdiction. In
*Davis*, we held that "a federal court in Idaho [could not]
exercise personal jurisdiction over an English corporation in
an action brought by plaintiffs from Louisiana and Indiana
for an accident that occurred in Indiana." 71 F.4th at 1159.
The facts in *Davis* are substantially different from the case
before us.

Tamarack Aerospace Group, a corporation with its
principal place of business in Idaho, contracted with a British
company, Cranfield Aerospace Solutions, for help in
obtaining certification from the European Aviation Safety
Agency and the Federal Aviation Administration ("FAA")
for Tamarack's Active Winglet Load System, which was
installed on existing airplanes. After the system was
approved by the FAA, it was installed on a Cessna aircraft.

The aircraft crashed in Indiana, killing the pilot and two passengers. *Id.* at 1159–60. Representatives of the three decedents brought suit in Idaho, asserting personal jurisdiction over Cranfield.

We upheld the district court's denial of jurisdiction, concluding that Cranfield had not purposefully availed itself of the privilege of doing business in Idaho. We wrote:

> While Tamarack is an Idaho resident, there[] [was] no evidence that Cranfield sought out Tamarack in Idaho or benefitted from Tamarack's residence in Idaho. Neither the contract's negotiations, terms, nor contemplated consequences establish that Cranfield formed a substantial connection with Idaho. And while the course of dealings show that Cranfield employees entered Idaho several times, those transitory trips into the forum state [did] not sufficiently reflect purposeful availment.

*Id.* at 1163. Over a forceful dissent, *see id.* at 1166 (Baker, J., dissenting), we held that there was no personal jurisdiction over Cranfield in Idaho.

The fundamentals of the case before us are very different from those in *Davis*. Ours is a much simpler and more conventional case. A defendant delivered an allegedly defective product to a plaintiff in a particular forum, knowing that it was intended for use in that forum. Specifically, My Choice entered into a contract with a CNMI company; the contract required that My Choice deliver its product to the CNMI; and My Choice knew that its product was intended for use in the CNMI by the CNMI government.

Under these circumstances, we have no hesitation concluding that My Choice purposely availed itself of the privilege of doing business in the CNMI.

## 2. Purposeful Direction

"[T]he purposeful direction test requires that the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." *Briskin*, 135 F.4th at 751 (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)). "Express aiming does not require differential targeting," or a forum-specific focus. *Id.* at 757. Instead, a defendant "expressly aims" at a forum "when its contacts are its 'own choice and not random, isolated, or fortuitous.'" *Id.* at 758 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)).

My Choice intentionally directed its communications and other actions toward the CNMI. *See id.* at 756 ("[E]ach of Shopify's actions in its regular course of business is an intentional act."). Its actions were expressly aimed at the CNMI. My Choice knew SuperTECH was based in the CNMI, that the software would be used in the CNMI, and that the transaction was for a product that specifically conformed to the requirements of the CNMI government. *See id.* at 756 & n.12 (finding "[t]hat Shopify allegedly committed its tortious activity knowing Briskin's device was in California" was enough for express targeting); *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1093 n.5 (9th Cir. 2023) ("The conduct purposefully directed at the forum is the seller's action of accepting the order and causing the product to be delivered to the forum."). The circumstances of this case make clear that My Choice knew

that if it breached its obligations under the contract, SuperTECH would feel that harm in the CNMI. *See Briskin*, 135 F.4th at 756 ("Shopify knows [that its conduct] will cause harm to California consumers by violating the very laws that the California legislature has enacted."). My Choice's arguments to the contrary rely almost exclusively on the proposition that differential targeting, in which a company targets one forum more than another, is required for express aiming. We expressly rejected that contention in our en banc decision in *Briskin. See id.* at 757. We therefore conclude that My Choice purposefully directed its activities at the CNMI.

### B. Arising Out of or Relating to Defendant's Contacts

Because the district court concluded that My Choice neither purposefully availed itself of the privilege of doing business in the CNMI nor purposefully directed its conduct towards the CNMI, it did not address whether this suit arises out of or relates to My Choice's contacts with the CNMI. On appeal, neither party contends that SuperTECH's claims against My Choice did not arise out of My Choice's contacts with the CNMI.

### C. Fair Play and Substantial Justice

The district court also did not address the factor of fair play and substantial justice. SuperTECH insists that this factor leans in favor of specific jurisdiction because the CNMI has an interest "in providing its residents, such as SuperTECH, with a convenient forum." My Choice bears "[t]he burden . . . to 'present a compelling case' that the exercise of jurisdiction is not reasonable." *Briskin*, 135 F.4th at 760–61 (quoting *Schwarzenegger*, 374 F.3d at 802). My Choice has not demonstrated that the exercise of specific personal jurisdiction would be unfair or unjust.

Conclusion

Applying the analysis provided in our en banc decision in *Briskin* and in our three-judge panel decision in *Schwarzenegger*, we hold that SuperTECH has alleged facts sufficient to establish specific jurisdiction over My Choice in the CNMI. In so holding, we do not fault the district court. When that court dismissed for want of jurisdiction, it properly relied on the then-binding decision of our three-judge panel in *Briskin*. It did not have the benefit of our later en banc decision in *Briskin*, in which we repudiated the analysis of the three-judge panel.

**REVERSED.**